

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00035-CV
_____

IN THE INTEREST OF S.A.G., J.S., J.V.S.,
J.S., J.S., AND J.S., CHILDREN

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 79120-D, Honorable Don R. Emerson, Presiding

June 11, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, J.G., the mother of children S.A.G, J.S., J.V.S., J.S., J.S., and J.S.,[1]

appeals the trial court's order terminating her parental rights to her children.[2]  We will

affirm the order of the trial court.

_____

[1] To protect the children's privacy, we will refer to appellant and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P.  9.8(b).

[2] The parental rights of the father of S.A.G. also were terminated in this proceeding.  He has not appealed.  The father of the other five children executed a voluntary relinquishment of parental rights to each child, and his rights were terminated as well.  Neither has he appealed.

## Background

The record shows J.G. has a long history with the Texas Department of Family & Protective Services. The events that lead directly to this termination proceeding began in January 2013, when J.G. committed the offense of forgery of a financial instrument, in Potter County. In March of that year, while she was out of jail on bond, J.G. travelled from Amarillo to Dallas, with the six minor children. J.G. made the trip to be present when her young grandson had open heart surgery. J.G. testified she was unaware at the time that the "co-signer had gone off [her] bond…" and that a Potter County warrant had been issued for her arrest.

On June 1, 2013, Dallas police learned of the Potter County warrant, and arrested J.G. at the motel where J.G. and her children were staying. The six minor children were in the motel room, as was another of her children, age eighteen.

The Department filed an emergency petition in a Dallas County district court, reporting to the court it had taken the minor children into its possession. In addition to seeking emergency, temporary and final orders regarding possession of the children, the petition said the parents' rights should be terminated if the statutory requirements were shown and reunification could not be achieved. The Dallas County district court appointed the Department temporary managing conservator and exercised jurisdiction over the case until August 2013, when it transferred the case to Potter County. After a permanency hearing in December 2013, the trial court approved the children's foster home placements. It also found J.G. was complying with her service plan.

In April 2014, J.G. committed another offense, theft. In September 2014, she plead guilty to the state jail felony theft offense, and was sentenced to six months in the state jail division of the Texas Department of Criminal Justice and assessed a $500 fine. The next month, October 2014, she was adjudicated guilty of the forgery offense, sentenced to eight months in the state jail division, and assessed a $500 fine and $950 restitution.

The Department amended its pleadings in November 2014, and the proceeding came for final hearing in a bench trial later that month. At that time, two of the children, S.A.G. (13) and J.S. (12), were placed in separate residential treatment centers in the Houston area; J.S. (7) and J.S. (5) were in a foster home in a town outside Amarillo; and J.V.S. (10) and J.S. (8), in a foster home in Amarillo.

After hearing testimony from a Department caseworker, J.G., J.G.'s mother, and a counselor, the court terminated J.G.'s parental rights to her six children. The court's written order states J.G.'s rights were terminated pursuant to Family Code sections 161.001(1)(D) and (E) and that termination was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E); § 161.001(2) (West 2014).

On appeal, J.G. challenges the sufficiency of the evidence to support the trial court's findings.

Analysis

The natural right existing between parents and their children is of constitutional dimension. *Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d

3

599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard under our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true*. In re E.N.C.,* 384 S.W.3d at 802 (*citing In re J.F.C.,* 96 S.W.3d at 266). To give appropriate deference to the factfinder's conclusions, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re E.N.C.,* 384 S.W.3d at 802. As a corollary to this requirement, an appellate court should also disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interests. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground on which the trial court relied in terminating parental rights as well as the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

Parental rights may be terminated under paragraph (E) of section 161.001(1) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, which may be proven by the parent's actions as well as by the parent's omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E) requires more than a single act or omission; a voluntary, deliberate and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "Endanger" means to expose to loss or injury; to jeopardize. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996) (*citing Texas Dep't of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d at 269.

J.G.'s mother testified to her willingness to help take care of her grandchildren, but said she had no way to travel to Dallas to retrieve them when J.G. was arrested. The evidence thus shows that J.G.'s commission of the forgery offense lead to her arrest in Dallas at a time when she had taken her six minor children away from her family support system in Amarillo. The consequences of her commission of the offense jeopardized her children's physical and emotional well-being. J.G. maintained at the hearing she did not know that a warrant had been issued for her arrest. But section 161.001(1)(E) does not require a showing that J.G. knew her conduct was endangering

6

to her children. *In the Interest of D.R.,* No. 02-06-146-CV, 2007 Tex. App. LEXIS 450, *18 (Tex. App.—Fort Worth Jan. 25, 2007, no pet.) (mem. op.). Nor, as noted, is it necessary that a parent's endangering conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d at 269. Finally, we note that proof of endangering conduct does not require a showing of a causal connection between parental misconduct and any resulting injury or adverse effect to children. *Reyna v. Dep't of Family & Protective Servs.,* No. 01-05-00985-CV, 2006 Tex. App. LEXIS 3402, at *21 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, no pet.) (mem. op.). For all these reasons, J.G.'s contention she lacked knowledge of the outstanding warrant, even if believed by the trial court, did not preclude a finding her conduct endangered her children.

While her children were in the Department's care and she was operating under a service plan designed toward reunification, J.G. committed the theft offense. The district court handling the 2013 forgery offense had deferred adjudication of guilt on that offense, but after the theft offense it found she had violated the terms of her community supervision,[3] adjudicated her guilty and assessed the sentence of incarceration.

Both the September 2014 judgment of conviction for the theft offense and the October judgment for the forgery offense credit J.G. with the time she was in jail after her commission of the theft offense, from April through September 2014. At the termination hearing, J.G. testified she had served all of her sentences on both offenses. The point remains, however, that J.G. committed a new offense and violated the terms

---

[3] The community supervision order is not in the record, but the judgment of conviction on the forgery offense states she violated the provisions of seven paragraphs of the terms of community supervision.

7

of her community supervision in other ways, all while her children were under the managing conservatorship of the Department. The trial court could have seen J.G.'s actions as a course of conduct endangering the well-being of her children. *See, e.g., Reyna,* 2006 Tex. App. LEXIS 3402 at *21 (course of conduct evidence). Our courts have held that incarceration alone is not enough to support termination under section 161.001(1)(E), but have recognized that a pattern of criminal behavior resulting in incarceration, with its attendant effects on the lives of children, may constitute endangering conduct under section 161.001(1)(E). *See In re J.E.,* No. 07-12-00449-CV, 2013 Tex. App. LEXIS 1063, at *7 (Tex. App.—Amarillo Feb. 5, 2013, no pet.) (mem. op.) (conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being); *In the Interest of C.C.*, No. 12-09-00429-CV, 2011 Tex. App. LEXIS 328, at *10 (Tex. App.—Tyler Jan. 19, 2011, no pet.) (mem. op.) *(citing In re S.D.,* 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)) (same); *In re A.W.T., M.G.T, and J.K.T.,* 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (intentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child).

The record does contain some evidence that, if believed, was contrary to the trial court's findings. J.G. told the court she was aware she had made mistakes and wanted her children with her. She testified too that her adult daughter was present with the children when J.G. was arrested. However, evidence also showed J.G.'s daughter was unable to care for the children in J.G.'s absence. J.G. participated in monthly meetings with the Department caseworker. Also, J.G. was never referred by the Department for

drug testing and testified she did not fail any screenings ordered as part of her probation. At the time of the final hearing, J.G. was employed and looking for appropriate housing.

We nevertheless conclude that the evidence, viewed in the light most favorable to a finding of endangerment, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction J.G. engaged in conduct that endangered the children's physical or emotional welfare. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's endangerment determination or was not so significant that the trial court could not reasonably have formed such a belief or conviction. Accordingly, we find the evidence was legally and factually sufficient to support the subsection (E) endangerment finding.[4] *See* TEX. FAM. CODE ANN. § 161.001(1)(E). We overrule J.G.'s first two issues, by which she challenges the sufficiency of that evidence.

We turn next to J.G.'s challenge of the sufficiency of the evidence supporting the trial court's best interests finding. There is a strong presumption that keeping a child with a parent is in the child's best interests. *In re R.R.,* 209 S.W.3d 112,116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interests. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). The best interests analysis evaluates the best interests of the child, not that of the parent. *In*

---

[4] Having determined the record contains evidence sufficient to sustain the subsection (E) ground, we need not address the evidence supporting the subsection (D) ground also found by the trial court.

*the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). Several factors may be considered in making this determination.[5]

Some evidence was presented at the final hearing to show the desires of the children. The counselor for J.V.S. and J.S. (8) testified she had 28 sessions with them. She told the court both girls were "pretty slow to warm up, which is not unusual," "struggled in school" and "had to go back a grade at one point." J.V.S. had "heightened anxiety" but her "behaviors over time have just improved significantly. . . ." The counselor characterized J.S. as "kind of a sassy little thing" and "pretty bossy" but said she "is starting to overcome some of those kind of negative behaviors." She is "physically and verbally aggressive still, but that's—that seems to be improving." The counselor opined the girls are adoptable and have asked her about adoption.

The caseworker also testified to the emotional and physical needs of the children now and in the future and to the future plans for the children. The children's placements at the time of the final hearing were characterized as "long term placements." The caseworker agreed that J.S., age 12 and S.A.G., 13, were not doing well in their respective treatment centers. J.S. had threatened to kill herself and others but she was "beginning to make headway in her therapy." S.A.G. was being treated at a facility because he sexually abused a child in a foster home in Dallas. The court could have taken the caseworker's testimony as showing S.A.G. and J.S. have needs their mother

---

[5] Texas courts have identified the following non-exclusive factors in determining the best interests of the child: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

10

is entirely unable to meet, that they require the care provided in their respective treatment centers now, and will require that care for the foreseeable future. The other children, J.S. (7), J.S. (5), J.V.S., and J.S. (8) were, by the caseworker's brief account, doing well in their foster placements. The caseworker told the court adoption is anticipated by the foster parents of J.S. (7) and J.S. (5). And, while the foster parents of J.V.S. and J.S. (8) had not committed to adopting the children, the caseworker told the court she believed the children could be adopted. The children's advocate told the court, "I'm in agreement with the Department. These kids need some permanency. They're struggling, but they are in good hands. I haven't heard the girls say anything about being mistreated, the boys either. They're very sweet when I go to see them. So the kids are taken care of, as far as I'm concerned." J.G. did not express a plan for the children. Their fathers' parental rights have been terminated, and J.G. did not demonstrate an ability to provide and care for any, much less all, of the children. There was evidence the Department evaluated her mother's home, but it was considered unacceptable as a placement option for a number of reasons including criminal convictions of persons living in the home, negligent supervision allegations and inadequacy of the home. The trial court could have seen this as evidence that the interests of J.S. (7), J.S. (5), J.V.S., and J.S. (8) were best served by terminating J.G.'s parental rights. *See In the Interest T.L.R.,* No. 14-14-00812-CV, 2015 Tex. App. LEXIS 3242, at *31 (Tex. App.—Houston [14th Dist.] Apr. 2, 2015, no pet.) (mem. op.) (*citing In re C.H.,* 89 S.W.3d at 28) (plans for adoption are relevant, but evidence of definitive plans are not required to find termination of parental rights is in children's best interests)).

We acknowledge some evidence in the record, if believed, might be contrary to the trial court's findings. J.G. expressed her desire for return of her children and told the court she visited her children every week, as allowed, when she was not in jail.[6] While she was unable to visit S.A.G. and J.S. (12) because they were placed in another city, she repeatedly requested visits and phone conversations. Even taking this evidence into consideration, the trial court could have determined termination of J.G.'s parental rights was in the children's best interests. *See In re S.P.M., E.A.T. and C.S.T.,* No. 07-13-00282-CV, 2014 Tex. App. LEXIS 614, at *25 (Tex. App.—Amarillo Jan. 21, 2014, no pet.) (mem. op.).

We acknowledge also the counselor's equivocal response to a question from the children's ad litem, in which she stated, "I think termination is always detrimental in some way, shape, form or fashion to the psyche of a child. However, at this point, I don't -- I don't know that it would significantly change their life, but I think for someone who probably would have to help them through it, it would be emotionally difficult, just like it always is." The trial court noted the counselor's opinion at the time it rendered its decision, but noted it nonetheless concluded termination was "right" insofar as the best interests of all of the children were concerned. We view the counselor's statement merely as an opinion consistent with the law's presumption that keeping a child with a parent is in the child's best interests. *See In re R.R.,* 209 S.W.3d at 116.

After viewing all of the evidence in the light most favorable to the best interests finding, we conclude the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of

---

[6] By the time of the final hearing, J.G. had not seen her children in nine months.

the parent-child relationship between J.G. and her children was in the children's best interests. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding that termination of the parent-child relationship between J.G. and the children was in the children's best interests or was not so significant that the trial court could not reasonably have formed such a belief or conviction. Thus, the evidence was legally and factually sufficient to support the trial court's best interests finding. We overrule J.G.'s third issue.

Conclusion

Having resolved each of J.G.'s issues against her, we affirm the order of the trial court.


James T. Campbell
Justice